IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

RONALD GARY LOOMAN,

          CV 11-143-M-DWM-JCL

    Plaintiff,

vs.

STATE OF MONTANA,          FINDINGS AND
MONTANA DEPARTMENT      RECOMMENDATIONS
OF CORRECTIONS, TROY McQUEARY,
individually, INTERNATIONAL UNION OF
OPERATING ENGINEERS NATIONAL
TRAINING FUND, DAVE LIEDLE, individually, and
DOES 3-100,

    Defendants.

_____

This matter is before the Court on Defendant International Union of Operating Engineers National Training Fund's (International Union) Fed. R. Civ. P. 12(b)(6) motion to dismiss several of Plaintiff Ronald Looman's claims against it. For the reasons discussed, International Union's motion should be granted.

**I.**    **BACKGROUND**

Plaintiff Ron Looman is an inmate incarcerated at the Montana State Prison in Deer Lodge, Montana. On October 28, 2008, Looman was working in the prison's Equipment Maintenance Shop. Defendant Troy McQueary, a Montana

1

Department of Corrections employee, directed Looman to report to Defendant Dave Liedle elsewhere on the prison's property for further work instructions. Liedle is alleged to have been an employee of International Union at the time pertinent to Looman's claims.

According to Looman, Liedle directed him to replace a broken air brake canister clamp on a truck. After Looman replaced the clamp, Liedle started the truck and pressurized the air brake system. Looman asserts that after the two discovered that a second clamp on the canister was leaking, Liedle directed Looman to remove the second clamp. Looman alleges that as he was removing the second clamp, the pressurized canister "blew up", causing Looman severe injuries to his face, head, neck, and upper back.

Looman advances numerous claims for relief. Invoking federal question jurisdiction, Looman advances a claim under 42 U.S.C. § 1983 asserting the various Defendants violated his federal constitutional rights. He also asserts claims under Montana law for negligence, strict liability, and violations of what was formerly titled the "Montana Safety Act", Title 50, Chapter 71, Mont. Code Ann.

International Union moves to dismiss several of Looman's claims. It argues Looman's pleading fails to state a claim under 42 U.S.C. § 1983, the Montana

Safety Act, and for strict liability.

## II. APPLICABLE LAW - Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

## III. DISCUSSION

### A. Claims Under 42 U.S.C. § 1983

Looman's federal claims against the International Union could only be

cognizable, if at all, under 42 U.S.C. § 1983. Section 1983 states, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 is the vehicle through which a plaintiff can present claims under federal law against a state official or employee if the plaintiff can establish that the official or employee was (1) acting under color of state law, and (2) deprived the plaintiff of a federal right secured by the Constitution or laws of the United States. *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

The first element under section 1983 requires that a defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Therefore, section 1983 generally does not apply to the conduct of private parties. *Kirtley*, 326 F.3d at 1092. "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806, 812 (9th Cir.

2010) (quoting *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

In limited circumstances, however, a private party's conduct may constitute state action for purposes of imposing liability on that party under section 1983. The Ninth Circuit Court of Appeals has recognized the following four tests used to identify private action that qualifies as state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley*, 326 F.3d at 1092 (quotation omitted). The fundamental consideration in each test is whether the private conduct is fairly attributable to the state. *Id*. Ultimately, a plaintiff bears the burden of establishing that a particular defendant was a state actor under any applicable test. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

Looman argues only that the International Union, as a private entity, is liable under section 1983 for having engaged in "joint action" with state prison officials and employees. For the reasons discussed, however, the Court finds that Looman has failed to plead any factual allegations supporting a claim under the joint action test.

The joint action test provides that a private individual or entity may "be liable under § 1983 if [the private party] conspired or entered joint action with a

state actor." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)). The test considers "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin*, 312 F.3d at 445. Joint action may exist where "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 926 (9th Cir. 2011). Joint action requires willful, joint participation between the state and private actors wherein "the state knowingly accepts the benefits derived from unconstitutional behavior." *Id*. (citations and quotations omitted).

In assessing the viability of Looman's joint action argument under the foregoing law and in the face of the International Union's motion to dismiss, the Court must apply the minimum pleading standards required under Fed. R. Civ. P. 8(a)(2) and 12(b)(6). Rule 8(a)(2) requires that Looman's pleading "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting Rule 8). Although "detailed factual allegations" are not necessary, a plaintiff must set forth more than bare allegations of a claim. *Id*. (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[]'" under the applicable theory of recovery. *Ashcroft*, 556 U.S. at 678.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable [under the applicable legal theory] for the misconduct alleged.

*Id*.

Here, Looman's allegations asserting a section 1983 claim against the International Union are very limited. He alleges: (1) McQueary told him "to go to where the [International Union], Job Corp was working on Prison Property and report to" Defendant Dave Liedle for further work instructions. Dkt. 25 at ¶ 12; (2) the International Union and other Defendants were "all acting under color of law," and deprived Looman of his rights guaranteed under the United States Constitution.[1] Dkt. 25 at ¶¶ 18-19; and (3) that all Defendants in general failed to have policies, practices, procedures and customs in place to protect Looman against harm. Dkt. 25 at ¶¶ 20-21.

Looman's allegations are insufficient under the joint action theory. He does not allege any facts describing the International Union's role, the nature of its

---

[1]Looman does not allege that International Union acted under color of <u>state</u> law.

work, or the reason for its presence on the state's prison property. There are no facts describing the working, or contractual relationship between the state prison officials and International Union. Significantly, Looman's cursory allegations fail to provide any factual background suggesting it is plausible that: (1) the International Union acted in concert with state officials to effect a deprivation of Looman's constitutional rights; (2) there existed willful, joint participation between the state and International Union wherein the state actors knowingly accepted the benefits derived from any unconstitutional behavior; or (3) the state actors so far insinuated themselves into a position of interdependence with International Union that they were joint participants in International Union's challenged activity.

"[B]are allegation[s] of [...] joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [the private defendants] acted under color of state law or authority." *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (quotation omitted). Conclusory allegations that do not include any factual information indicating that the state actors "were involved in the [private actor's] allegedly unlawful conduct" are not sufficient to state a claim for relief under a theory of joint action, and the claim is subject to dismissal under Rule 12(b)(6). *Martinez-Rodriguez*, 2012 WL

8

967030,*3-4 (N.D. Cal. 2012) (citing *DeGrassi*, 207 F.3d at 647). The Court is compelled to conclude that Looman's conclusory allegations are insufficient to state a claim that International Union's conduct was committed under color of state law under the joint action theory. Therefore, International Union's motion should be granted, and Looman's section 1983 claims against it should be dismissed.

### B. Strict Liability - Abnormally Dangerous Activity

The International Union moves to dismiss Looman's strict liability claim on the ground that Looman's allegations fail to sufficiently plead any facts suggesting it is plausible that the International Union was engaged in an abnormally dangerous activity as defined under Montana law. The Court agrees.

The Montana Supreme Court has expressly "adopted the Restatement (Second) of Torts §§ 519 & 520 (1976) to determine whether an activity is abnormally dangerous." *Chambers v. City of Helena*, 49 P.3d 587, 590 (Mont. 2002), overruled on other grounds by *Giambra v. Kelsey*, 162 P.3d 134 (Mont. 2007). Section 519 provides as follows:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which

9

makes the activity abnormally dangerous.

*Restatement (Second) of Torts* § 519 (1977).

Section 520, in turn, lists the following factors used to determine whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Restatement (Second) of Torts* § 520 (1977). While one factor "may end up weighing more heavily than the others, a trial court's consideration of whether an activity is abnormally dangerous must at least explicitly consider all the factors listed in Restatement § 520." *Chambers*, 49 P.3d at 592. In doing so,

> [t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care. In other words, are its dangers and inappropriateness for the locality so great that, despite any usefulness it may have for the community, it should be required as a matter of law to pay for any harm it causes, without the need of a finding of

10

negligence.

*Restatement (Second) of Torts* § 520, comment f.

The issue of "whether an activity is abnormally dangerous, thereby subjecting the operator to strict liability, is a question of law for the courts to decide." *Chambers*, 49 P.3d at 591.

Again, Looman's allegations under his strict liability theory of recovery are very limited and cursory. He alleges the "design" of the truck that had the defective air brake canister "created a use that was an abnormally dangerous activity[.]" Dkt. 25 at ¶ 28. He alleges the truck "posed a high degree of harm to users," that "there was a high likelihood that use of it would result in great harm[,]" and that "[a]ny user would be unable to eliminate the risk by the exercise of reasonable care." Dkt. 25 at ¶ 29. Looman, however, does not present any factual information in support of these conclusory allegations. Rather, these allegations merely recite the elements and factors of a strict liability theory of recovery. Allegations that are nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, the Court finds Looman has not presented any factual

11

allegations that address and support any of the other remaining factors identified in *Restatement (Second) of Torts* § 520. Therefore, the Court concludes Looman's allegations do not provide sufficient facts suggesting that International Union's use and repair of the subject truck were abnormally dangerous activities. Looman's claim of strict liability fails as a matter of law, and should be dismissed.

    C.    **Montana Safety Act**

International Union moves to dismiss Looman's claim alleging it breached its duty to provide Looman with a safe workplace as required under the Montana Safety Act at Mont. Code Ann. §§ 50-71-201 and 203. Looman concedes this claim is subject to dismissal.

The referenced statutory provisions govern an employer's conduct toward its "employees," and the Montana Safety Act adopts the definition of an "employee" as set forth in Mont. Code Ann. § 39-71-118. Mont. Code Ann. § 50-71-204(1). Included within the definition of an employee is "an inmate working in a federally certified prison industries program authorized under [Mont. Code Ann.] 53-30-132[.]" Mont. Code Ann. § 39-71-118(1)(f). Consistent with section 39-71-118(1)(f), Mont. Code Ann. § 53-30-132(7) provides that "[i]nmates not working in a federally certified prison industries program are not employees, either public or private, and employment rights accorded other classes of workers

12

do not apply to the inmates."

Here, Looman concedes he was not working in a federally certified prison industries program. Therefore, the Montana Safety Act is inapplicable, and Looman's claim should be dismissed.

## IV. CONCLUSION

For the reasons discussed, IT IS RECOMMENDED that International Union's Fed. R. Civ. P. 12(b)(6) motion to dismiss be granted, and Looman's claims against International Union under 42 U.S.C. § 1983, his strict liability theory, and the Montana Safety Act be dismissed.

DATED this 23rd day of August, 2012.

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge