# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

_____

RONALD GARY LOOMAN,

                                     CV 11-143-M-DWM-JCL

                 Plaintiff,

      vs.

                                     FINDINGS AND

STATE OF MONTANA,                      RECOMMENDATIONS
MONTANA DEPARTMENT
OF CORRECTIONS, TROY McQUEARY,
individually, INTERNATIONAL UNION OF
OPERATING ENGINEERS NATIONAL
TRAINING FUND, DAVE LIEDLE, individually, and
DOES 3-100,

                      Defendants.

_____

      This matter is before the Court on the following Fed. R. Civ. P. 56 summary

judgment motions: (1) Defendants State of Montana and the Montana Department

of Corrections' (State Defendants) motion for summary judgment, or partial

summary judgment, as to their alleged negligence and Plaintiff Ron Looman's

alleged comparative negligence; (2) Looman's cross-motion for summary

judgment as to the State Defendants' alleged negligence; and (3) Defendant

International Union of Operating Engineers National Training Fund's

(International Union) motion for summary judgment regarding its alleged

1

negligence. For the reasons stated, the Court recommends that the International Union's motion be granted, that Looman's motion be denied, and the State Defendants' motion be denied in substantial part.

## I.    BACKGROUND

Plaintiff Ron Looman was an inmate at the Montana State Prison in Deer Lodge, Montana. Defendant Troy McQueary, an employee of the Department of Corrections, supervised Looman in the performance of his inmate job duties.

The International Union is an entity that operates the federal Job Corps and provides, among other things, heavy equipment operator training. The State Defendants permit the International Union to use some of the approximately 3,000 acres of ranch land around the prison to engage in its training activities. It also performs heavy equipment work for the State Defendants. At the time of the subject incident, Defendant Dave Liedle was an employee of the International Union and was a training instructor and heavy equipment operator.

On October 28, 2008, Looman was injured while working on a truck owned by the International Union. He alleges that he was performing work at the direction of both McQueary and Liedle. Looman commenced this action to obtain compensation for those injuries.

Looman invoked federal question jurisdiction by advancing federal civil

rights claims against all of the Defendants under 42 U.S.C. § 1983. And he

invoked the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) by

asserting claims under Montana law for negligence, strict liability, violations of

the Montana Safety Act, Title 50, Chapter 71, Mont. Code Ann., and liability

under the doctrine of res ipsa loquitur.

The Court previously dismissed most of Looman's claims, including all of

his section 1983 claims, his strict liability claims against the International Union,

and his claims under the Montana Safety Act. The Court dismissed McQueary

from this action based upon the immunity afforded him by Mont. Code Ann. § 2-

9-305(5). The Court also dismissed Liedle due to Looman's failure to effect

timely service of his Second Amended Complaint upon Liedle as required under

Fed. R. Civ. P. 4(m).

What remains for disposition against the State Defendants are Looman's

claims of: (1) strict liability; and (2) negligence under the doctrine of respondeat

superior. Looman's only remaining claim against the International Union is his

claim of negligence based, in part, on respondeat superior.

## II.  APPLICABLE LAW

### A.    Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue [of material fact] for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).

In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and the court must construe all facts in the light most favorable to the non-moving party.  *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (citation omitted).  When presented with cross-

motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

**B.** **Application of Montana Law**

Because jurisdiction over Looman's claims advanced under Montana law is founded upon the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), the Court "is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000).

**III. DISCUSSION**

**A.** **Negligence**

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr v. Great Falls International Airport Authority*, 107 P.3d 471, 477 (Mont. 2005). The common and statutory law of Montana impose a general duty upon every person to exercise ordinary and reasonable care.

> Except as otherwise provided by law, each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management

of the person's property or person except so far as the person has willfully or by want of ordinary care brought the injury upon the person.

Mont. Code Ann. § 27-1-701.

A cause of action for negligence requires the plaintiff to prove four essential elements:  "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted."  *Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008).  Summary judgment in favor of a defendant is appropriate "if a plaintiff fails to offer proof of any one of the elements of a negligence claim[.]"  *Dubiel v. Montana Department of Transportation*, 272 P.3d 66, 69 (Mont. 2012).  Thus, to avoid summary judgment "the plaintiff must raise genuine issues of material fact with regard to" each of the four elements.  *Beehler v. Easter Radiological Associates, P.C.*, 289 P.3d 131, 136 (Mont. 2012) (citations and quotations omitted).

Claims of negligence, however, "are generally not susceptible to summary judgment adjudication" due to the factual issues that are ordinarily involved.  *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 (Mont. 2010).  But "when reasonable minds cannot differ, questions of fact can be determined as a matter of law."  *Newman v. Lichfield*, 272 P.3d 625, 630 (Mont. 2012).

Both Defendants have acknowledged that their respective employees, McQueary and Liedle, were acting in the course and scope of their employment at the time of the subject incident. Thus, Defendants would be vicariously liable for any negligence on the part of their employees. Mont. Code Ann. § 2-9-102; *Denke v. Shoemaker*, 198 P.3d 284, 301 (Mont. 2008).

Except where indicated, the material events giving rise to all of Looman's claims of negligence are generally undisputed, and summarized as follows:

During his incarceration, Looman performed jobs as a welder and service truck operator under the supervision of Troy McQueary. He was not, however, a mechanic, and had never received instruction or training in any type of automotive mechanics. McQueary, in contrast, has a bachelor's degree in diesel mechanics from Montana State University-Northern.

On October 28, 2008, Dave Liedle was operating a truck on the Department of Corrections' ranch property when he drove over some rocks and damaged the truck's "dual clamp" air brake canister.

Liedle contacted McQueary requesting his assistance in repairing the damage. McQueary was familiar with, and experienced working on, dual clamp air brake canisters. A dual clamp air brake canister has two distinct ends or sides: the "service side" and the "spring side." *See* Dkt. 70-8. Each side is contained by

a separate clamp on the canister.

Upon inspecting the brake canister on Liedle's truck, McQueary saw that the service-side clamp was bent and needed to be replaced. McQueary did not inspect the condition of the spring-side clamp. Dkt. 75-2 at 16 of 94.

Generally, the act of performing work on the service-side clamp does not present significant risks or dangers. The spring-side of the canister, however, contains an internal compressed spring. The spring exerts approximately 1,500 pounds of pressure per square inch against the end cap on the spring-side of the canister. The end cap is held in place by the spring-side clamp. The parties agree that the act of performing work on the spring-side clamp presents a substantial risk of danger due to the pressure of the internal spring. And they agree that the end cap and spring must be "caged" before performing work on the spring-side clamp. Caging requires the insertion of a bolt in the cap to prevent the cap from coming off under the pressure from the spring when the spring-side clamp is loosened or removed.

Based on his education and experience, McQueary concedes he knew of the dangers associated with working on the spring-side of the canister if the spring-side cap and spring are not caged prior to performing work on the spring-side of the canister.

After obtaining a replacement service-side clamp assembly, McQueary directed Looman to take the assembly to Liedle's truck. McQueary admits he did not provide Looman with any specific instructions about what repairs to the canister needed to be made, or how to accomplish them.

Looman, on the other hand, had no experience working on air brake canisters. Nor was he aware of the dangers associated with working on the spring-side of the canister without properly caging the end cap and spring.

McQueary does not dispute Looman's assertion that McQueary knew Looman did not have sufficient experience or knowledge about how to work on an air brake canister. Dkt. 75-4 at 36 of 54. In fact, McQueary confirmed that he was not aware of any experience that Looman may have had "working on an air brake system on a truck." Dkt. 75-2 at 16 of 94. And specifically, McQueary did not know if Looman "had ever worked on a spring brake[.]" Dkt. 75-2 at 11 of 94.

Despite McQueary's knowledge and Looman's lack of knowledge about dual clamp air brake canisters, McQueary did not give Looman any specific instructions. Looman recalls that McQueary simply told him to "[g]o over to where [the] Job Corps is working and do what they ask you to do." Dkt. 70-3 at 10 of 27. McQueary confirms that he told Looman that Liedle "would show [Looman] what needed to be done" (dkt. 70-4 at 14 of 27), or that Liedle would

9

"tell [Looman] what to do." Dkt. 70-4 at 26 of 27.

McQueary did not instruct Looman to avoid any work on the spring-side of the canister, or caution him about the dangers associated with working on the spring-side clamp.

When Looman arrived at the location of Liedle's truck he observed the damaged air brake canister. Looman states the clamp on the service-side of the canister was completely missing.

It is undisputed that Liedle is also not a mechanic, had no experience with air brake canisters, and was unaware of the dangers associated with performing repair work on the spring-side of the canister. Liedle states he thought Looman was a mechanic capable of making the necessary repairs.

After Looman installed the replacement clamp parts on the service-side of the canister, Liedle started the truck. Looman heard an air leak from the spring-side of the canister.

Looman and Liedle dispute the details of what happened next. Looman states that Liedle told him to take the spring-side clamp off to see if the air leak could be repaired. But Liedle states that he told Looman not to proceed with any further repairs because he believed that Looman's repair to the service-side of the canister was sufficient to allow Liedle to drive the truck back to the International

10

Union's maintenance shop in Anaconda, Montana, for further repairs.

In any event, Looman crawled under the truck to remove the clamp on the spring-side of the canister. The clamp consists of two half-circle sides held together by a bolt at each end of the half circles. *See* Dkt. 70-10. Looman observed a red tag on one of the two clamp bolts which displayed a warning as follows: WARNING SPRING LOADED DO NOT REMOVE THIS CLAMP RING. Dkt. 73-6 at 2 of 2. Looman acknowledges that he saw the red tag, that it referred to a spring, and that he understood it to indicate that some sort of danger existed. Dkt. 70-2 at 20 of 27. Nonetheless, Looman did not heed the warning, and he continued to loosen the spring-side clamp. The cap on the spring-side of the canister came off under the pressure of the internal spring, and struck Looman in the head.

## 1. Res Ipsa Loquitur

As part of their motions for summary judgment, the State Defendants and the International Union ask the Court to "[dismiss] Looman's *res ipsa loquitur* claim." Because the doctrine of res ipsa loquitur is a rule of evidence, not a rule of pleading or an independent ground of liability, this aspect of the Defendants' motions is properly reviewed as a motion in limine designed to preclude Looman from relying upon the doctrine to prove his claim of negligence against the State

11

Defendants and the International Union.  *Whitney v. Northwest Greyhound Lines*,

242 P.2d 257, 270-71 (Mont. 1952).

The doctrine of res ipsa loquitur permits proof of negligence by

circumstantial evidence.  *Howard v. St. James Community Hospital*, 129 P.3d 126,

132 (Mont. 2006).  Specifically,

> [t]he doctrine of res ipsa loquitur permits an inference of negligence on the
> part of one in control of an instrumentality which causes injury when (1) the
> injury occurs without any fault of the injured person; (2) the instrumentality
> is under the exclusive control of the defendant at the time of the injury; and
> (3) the injury is such as in the ordinary course of things does not occur if the
> one having such control uses proper care.

*Howard*, 129 P.3d at 132 (quoting *Romans v. Lusin*, 997 P.2d 114, 119 (Mont.

2000)).

Res ipsa loquitur is inapplicable under the facts of this case.  The air brake

canister and the truck to which it was attached were owned by the International

Union, and at the moment the end cap of the brake canister came off and injured

Looman the instruments of Looman's injuries were under his control by virtue of

his conduct in loosening the spring-side clamp.  Therefore, the brake canister was

neither under the exclusive control of the State Defendants, nor the exclusive

control of the International Union.  Thus, the undisputed facts in this case render

the doctrine of res ipsa loquitur inapplicable as a matter of law, and Looman is

properly precluded from relying upon the doctrine to sustain his burden of proof upon his claims of negligence.

## 2. McQueary's Negligence - State Defendants' Motion

### a. Expert Testimony

As a threshold matter, the State Defendants assert that Looman's negligence claim fails because it is not supported by expert testimony. They argue that under the circumstances of this case expert testimony is required to establish: (1) the applicable standard of care McQueary owed to Looman; (2) how McQueary breached that standard of care; and (3) how McQueary's conduct caused Looman's injuries.

Expert witness testimony is required in certain negligence cases to establish the elements of duty, breach, and causation when those issues are "sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Dubiel v. Montana Department of Transportation*, 272 P.3d 66, 70 (Mont. 2012). *Tin Cup County Water and/or Sewer District*, 200 P.3d 60, 69 (Mont. 2008) (concluding expert opinion testimony was required where the issues of causation

were "beyond the common experience and understanding" of lay jurors).[1]  In a situation where expert testimony is required to prove a plaintiff's negligence claim, but the plaintiff does not present expert testimony, summary judgment dismissing the claim is warranted.  *Dubiel*, 272 P.3d at 70.

But here, the parties do not dispute that the spring-side clamp and end cap on the air brake canister pose a significant risk of harm due to the pressure of the internal spring contained by the clamp and the cap.  It is undisputed that before a person may safely perform work on the spring-side clamp, the assembly must be caged to prevent the assembly from coming off under the pressure of the spring.  Finally, McQueary concedes he was fully aware of the fact that if the spring-side of the canister is not properly caged a person working on the spring-side clamp will be exposed to a serious risk of injury.  Consequently, the Court finds that the

---

[1]Although the use of expert witnesses in federal court is generally governed by the Federal Rules of Evidence, where, as here, a legal claim is governed by the substantive law of the state in which the federal court sits, the federal court must look to state law with respect to the issue of whether expert witness testimony is required to substantiate a claim that an individual deviated from the standard of care applicable to his conduct.  *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988) (applying California law to the issue of whether expert testimony was required).  A federal court sitting in diversity jurisdiction, or exercising supplemental jurisdiction, must apply state evidentiary rules which are "intimately bound up" with the state's substantive law governing the legal claim.  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).  Accordingly, this Court will apply Montana law with respect to the issue of whether expert opinion testimony is required in this case.

elements of duty, breach and causation in this case do not present matters that would be beyond the common experience and understanding of the members of a jury.

### b.   Duty of Care

As to the duty of care itself, the circumstances of McQueary's conduct in directing and supervising the work Looman performed in his prison job are akin to those present in a master and servant relationship.  Under Montana law, where a master knows, or ought to know, that a servant is inexperienced with a particular matter which presents a risk of danger that is known to the master then the master is subject to a heightened duty of care to provide cautionary instructions to the servant, i.e. a duty of "reasonable care not to expose an employee to a danger of which [the employee] is not aware."  *Gregory v. Chicago, Milwaukee & St. Paul Railway Co. of Montana*, 113 P. 1123, 1126 (Mont. 1911).  Stated differently, a master must provide "additional warnings, explanations, or cautionary instructions" to a servant with respect to dangers that are known to the master (or which should be known to the master in the exercise of reasonable care) where the dangers are unknown to the servant (or are undiscoverable by the servant in the exercise of reasonable care required for the servant's own safety), or the dangers are not fully appreciated by the servant due to the servant's lack of experience.

15

*Therriault v. England*, 116 P. 581, 584 (Mont. 1911); and *Kuphal v. Western Montana Flouring Co.*, 114 P. 122, 125 (Mont. 1911).

In view of the relationship which existed between McQueary and Looman, as well as McQueary's knowledge of the danger presented by working on the spring-side clamp — a danger of which Looman was unaware — McQueary had a duty to affirmatively warn Looman of the danger. That is, of course, unless McQueary shows that Looman could have discovered and appreciated the danger through the exercise of reasonable care. Aside from their argument that expert testimony on the standard of care should be required, the State Defendants do not disavow — nor could they — that McQueary owed Looman a duty to exercise reasonable care under the circumstances.

The question of whether a legal duty exists is an issue of law for the Court to resolve, *Slack v. Landmark Co.*, 267 P.3d 6, 10 (Mont. 2011), and the scope or extent of a legal duty "must necessarily be adjudicated upon a case-by-case basis." *Larson-Murphy v. Steiner*, 15 P.3d 1205, 1212 (Mont. 2000).[2] "At the most basic level, we all share the common law duty to exercise the level of care that a

---

[2]Where there are disputed issues of fact that are determinative as to the presence or absence of a duty owed to a plaintiff, then the court "must instruct the jury to make the initial fact determination, and then apply the correct standard as furnished by the court." *Contreras v. Vannoy Heating & Air Conditioning, Inc.*, 892 P.2d 557, 560 (Mont. 1995) (citation omitted).

reasonable and prudent person would under the same circumstances." *Fisher v. Swift Transportation Co., Inc.*, 181 P.3d 601, 606 (Mont. 2008). But the existence of a legal duty applicable in a specific situation "turns primarily upon foreseeability" — the foreseeability of whether particular conduct could expose a person to a risk of harm. *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, ___ P.3d ___, 2012 WL 6643862, *2 (Mont. 2012) (citation omitted).

In this regard, the second prong of the State Defendants' argument is based upon the assertion that McQueary did not breach his duty to exercise reasonable care in sending Looman to replace the service-side clamp because there is no evidence that McQueary "expected" Looman to work on the spring-side clamp on the brake canister. Dkt. 69 at 11. Reduced to its essence, this argument is one based upon a lack of foreseeability.

"Foreseeability as it relates to the duty element of negligence is measured on a scale of reasonableness dependent upon the foreseeability of the risk involved with the conduct alleged to be negligent." *Newman v. Lichfield*, 272 P.3d 625, 631 (Mont. 2012) (quoting *Lopez v. Great Falls Pre–Release Services*, 986 P.2d 1081, 1086-1087 (Mont. 1999), overruled, in part, on other grounds, *Prindel v. Ravalli County*, 133 P.3d 165, 180 (Mont. 2006)). And if a defendant "could have reasonably foreseen that his or her conduct could have resulted in an injury," then

the law imposes a duty upon that defendant.  *Fisher*, 181 P.3d at 607.  Thus the failure to anticipate and guard against dangers which are improbable or could not reasonably be anticipated is not negligence.  *Newman*, 272 P.3d at 631.  "Conversely, it stands to reason that if a reasonably prudent defendant can or should foresee a danger of direct injury, he may be negligent."  *Id*.

A reasonably prudent person in the position of McQueary — armed with the knowledge of the danger posed to an inexperienced person working on a dual clamp brake canister — would reasonably anticipate that an inexperienced servant like Looman could unwittingly proceed to work on the spring-side of the brake canister in order to complete the task he was given.

### c. <u>Breach of Duty</u>

The issue of "whether there was a breach of duty is an issue of fact for the fact finder[.]"  *Gatlin-Johnson ex rel. Gatlin*, 2012 WL 6643862 at *2 (citation omitted).  But where facts are undisputed such  "questions of fact can be determined as a matter of law."  *Newman v. Lichfield*, 272 P.3d 625, 630 (Mont. 2012).  McQueary readily concedes that he did not provide any specific instructions to Looman as to the exact repair work Looman was to perform.  McQueary admits he did nothing more than tell Looman to go to Liedle's truck and that Liedle would tell or show Looman what to do.  It is undisputed that

McQueary did not provide Looman with any warnings or cautionary instructions as to the dangers posed by the spring-side of the canister.

At the same time, Looman acknowledges that he saw the red warning tag on the spring-side clamp and that he recognized it referred to some unspecified danger. Thus, notwithstanding McQueary's conditional duty to warn, genuine issues of material fact exist as to whether Looman, through the exercise of reasonable care required for his own safety, could have discovered and appreciated the danger posed by working on the spring-side of the canister. This is a factual issue that goes directly to whether McQueary had a duty, in the first instance, to warn Looman of the dangers associated with working on the spring-side clamp, and must be decided by the jury. *See supra* at 15-16. It is conceivable that the jury could conclude that the dangers associated with the spring-side clamp could have been discovered and appreciated by Looman through the exercise of reasonable care thus leading to a finding that McQueary did not have a duty to warn. It is also entirely conceivable that the jury could conclude that Looman could not have reasonably discovered or appreciated the danger leading to a conclusion that McQueary did breach his duty to warn, but that Looman also breached his duty of reasonable care by proceeding to work on the spring-side clamp without having any prior experience in doing so, thus requiring the jury to

apporttion fault.

### d.    <u>Causation</u>

Shifting gears, the State Defendants next argue that any breach of
McQueary's duty to warn Looman did not cause Looman's injuries.  Specifically,
they argue that Looman's failure to heed the warning on the red tag attached to the
spring-side clamp was the sole proximate cause of his injuries.

"Negligence actions usually involve questions of fact regarding breach of
duty and causation; as a result, they are not ordinarily susceptible to summary
judgment and are usually better resolved at trial."  *Craig v. Schell*, 975 P.2d 820,
822 (Mont. 1999).  Causation may, however, be determined as a matter of law
where reasonable minds can reach but one conclusion.  *Jacobs v. Laurel Volunteer
Fire Department*, 26 P.3d 730, 733 (Mont. 2001) (citing *Riley v. American Honda
Motor Co., Inc.*, 856 P.2d 196, 198 (Mont. 1993)).  Contrary to the assertion of the
State Defendants, reasonable minds could differ on the issue of causation under
the facts of this case.

As in the instant case, where there are allegations that the acts of more than
one person combined to produce a single harm, each of the multiple acts or
omissions is a cause of the harm if it was a substantial factor in bringing about the
harm.  *Busta v. Columbus Hospital Corporation*, 916 P.2d 122, 139-40 (1996)

20

(citing *Rudeck v. Wright*, 709 P.2d 621, 628-29 (Mont. 1985)).

Here, despite Looman's own conduct in failing to heed the warning printed on the red tag, Looman has sufficiently identified facts concerning McQueary's conduct in failing to adequately warn Looman and expressly instruct him not to work on the spring-side clamp upon which a jury could conclude that McQueary's conduct was a substantial factor in causing the injuries sustained by Looman. Consequently, this aspect of the State Defendants' motion for summary judgment must be denied.

### e. Comparative Fault

As a final basis for summary judgment, the State Defendants argue that the Court should find as a matter of law that Looman's comparative negligence exceeds any negligence attributable to McQueary, and that in accordance with Mont. Code Ann. § 27-1-702 Looman is thus barred from recovery on his claim of negligence.[3]  In the alternative, the State Defendants ask the Court to rule that by

---

[3]The decisional law on which the State Defendants rely in their effort to establish that Looman's negligence exceeds McQueary's negligence is no longer good law.  In *Sullivan v. Doe*, 495 P.2d 193, 197-98 (Mont. 1972), the plaintiff's negligence completely barred his claim against the defendant as a matter of law, but only by virtue of the doctrine of contributory negligence applicable at that time.  Since 1975, however, Montana law follows the doctrine of comparative negligence under Mont. Code Ann. § 27-1-702.  Thus, *Sullivan* does not support the State Defendants' suggestion that the Court can conclude, as a matter of law, that Looman's negligence exceeds 51% of the total negligence of all the parties

disregarding the red warning tag and proceeding to remove the spring-side clamp

Looman was negligent as a matter of law. These arguments fair not a whit better

than the State Defendants' argument on causation.

Indeed, Looman had a duty of ordinary care for his own protection. Mont.

_____

thereby barring his negligence claims. *See also Sullivan v. Northern Pacific Railway Co.*, 94 P.2d 651 (Mont. 1939) (concluding that the plaintiff's contributory negligence — not her comparative negligence — barred her claim as a matter of law).

The State Defendants also rely on *Brohman v. State of Montana*, 749 P.2d 67 (Mont. 1988) to support their assertion that Looman's negligence is, as a matter of law, 51% or more of the combined negligence of all parties. In *Brohman* the court concluded that the plaintiff's negligence exceeded the defendant's negligence, but only under circumstances where the plaintiff failed to establish that the defendant breached a legal duty (749 P.2d at 70), and that defendant's conduct caused plaintiff's injuries. 749 P.2d at 72. Even assuming defendant was liable as was required in the context of defendant's summary judgment motion, due to the lack of evidence of the defendant's breach and causation, the district court appropriately concluded the plaintiff's negligence far exceeded any negligence attributable to the defendant. 749 P. 2d at 70, 72.

Finally, in *Pappas v. Midwest Motor Express, Inc.*, 886 P.2d 918 (Mont. 1994) in the context of the defendant's summary judgment motion the court presumed that the defendant was negligent, but concluded under the facts of the case that the plaintiff's "actions demonstrate[d her] substantial disregard of a known danger." 886 P.2d at 921. Thus, the Court held "that reasonable minds could not differ in concluding" that plaintiff caused her own injuries and, as a matter of law, her conduct exceeded the defendant's assumed negligence. *Id*. Here, it is undisputed that Looman was not aware of the danger, or at least was unaware of the full scope of the danger, posed by the spring-side of the air brake canister. Thus, Looman did not disregard a known danger, and reasonable minds could reach different conclusions as to the apportionment of negligence between McQueary and Looman's respective conduct.

22

Code Ann. § 27-1-701; *Pappas v. Midwest Motor Express, Inc.*, 886 P.2d 918, 921 (Mont. 1994). Again, the issue of breach of a duty is normally an issue for the fact finder to resolve. *Gatlin-Johnson ex rel. Gatlin*, 2012 WL 6643862 at *2 (citation omitted). And under the circumstances of this case reasonable minds could draw different conclusions as to whether Looman breached his duty of ordinary care. Likewise, the degree of comparative negligence "is normally an issue for the jury or fact-finder to resolve[,]" because the jury has to weigh and apportion negligence liability to multiple parties or individuals. *Peterson v. Eichhorn*, 189 P.3d 615, 622-23 (Mont. 2008). Undoubtedly, reasonable minds could draw different conclusions as to the proper apportionment of comparative negligence.

### 3. McQueary's Negligence - Looman's Motion

Looman, in turn, moves for summary judgment establishing the State Defendants' negligence as a matter of law based on McQueary's conduct. Although the Court concludes McQueary was subject to a conditional duty to warn Looman, for the reasons previously discussed there remain genuine issues of material fact as to McQueary had a duty to warn Looman, whether he breached his duty thereby causing Looman's injuries. Thus, Looman is not entitled to summary judgment as to the issue of the State Defendants' negligence.

### 4. International Union - Liedle

The International Union moves for summary judgment dismissing Looman's claims of negligence advanced against it. It argues it did not owe Looman any particular legal duty of care under the circumstances of this case. Alternatively, the International Union argues that Liedle did not breach any applicable legal duty and did not commit any negligent act.

Again, the existence of a legal duty primarily turns on the issue of whether it was reasonably foreseeable to a particular defendant that his or her conduct could expose a person to a risk of harm, or result in an injury. *Gatlin-Johnson ex rel. Gatlin*, 2012 WL 6643862 at *2; *Fisher*, 181 P.3d at 607.

The circumstances of this case present undisputed facts which preclude a finding that it was reasonably foreseeable to Liedle that his conduct would expose Looman to a risk of harm, or would result in injury to Looman. It is undisputed that Liedle had no experience with air brake canisters, and that he was unaware of the dangers associated with performing repair work on the spring-side of the canister. Looman has not presented any evidentiary material suggesting that Liedle had knowledge of any danger associated with working on the air brake canister, or that a reasonably prudent person in Liedle's position should have been aware of the danger. In sum, Looman has not presented any evidence suggesting it was reasonably foreseeable to Liedle that Looman would be exposed to a risk of

harm by working on the air brake canister.

Even assuming the facts presented by Looman are true — that Liedle directed Looman to proceed to repair the spring-side of the canister — there exists no evidence in the record indicating Liedle knew, or reasonably should have known, that his conduct in directing Looman to make the repair would expose Looman to a risk of harm. Specifically, Looman has not identified any evidence indicating that Liedle knew Looman had found the red warning tag on the canister. Thus, Looman has not met his summary judgment burden of establishing that this incident was foreseeable to Liedle. "If a reasonably prudent person can foresee no risk of injury, that person is not negligent." *Jackson v. State*, 956 P.2d 35, 47 (Mont. 1998) (citing *Mang v. Eliasson*, 458 P.2d 777, 781 (Mont. 1969)). Consequently, the International Union is entitled to summary judgment on Looman's claims of negligence predicated upon Liedle's conduct.

The International Union moves to dismiss Looman's claim alleging that it negligently failed to perform proper maintenance on the truck Liedle was driving. Looman has not introduced any evidence of any faulty, deficient, or negligent maintenance performed on the truck that caused Looman's injuries. Looman's involvement in repairing the truck was due only to the damage that occurred to the air brake canister while Liedle was driving the truck on the day Looman was

injured. Therefore, the International Union is entitled to summary judgment with respect to Looman's negligent maintenance claim.

In opposing the International Union's motion, Looman asserts that the International Union is liable for its own conduct. Looman argues the International Union knew that air brake canisters are very dangerous. After the incident on October 28, 2008, Liedle contacted his supervisor, Kenny Kohl. Mr. Kohl informed Liedle that air brake canisters are dangerous to work on, and he asked Liedle why Looman was working on the canister. Dkt. 75-3 at 7 of 17. Looman suggests, in view of Mr. Kohl's statement, that either Liedle or the International Union were negligent in failing to warn Looman of the danger of which Mr. Kohl and the International Union were aware.

The Court finds the facts of this case do not support Looman's assertion of liability. Liedle confirms that the first time he learned that air brake canisters are dangerous to work on was when he talked to Mr. Kohl on October 28, 2008. Dkt. 75-3 at 7 of 17. Thus, as discussed above, absent knowledge of the risk, Liedle was under no duty to warn Looman despite Mr. Kohl's knowledge.[4]

_____

[4]Looman's claim predicated upon Mr. Kohl's knowledge of the danger could potentially subject the International Union to liability for negligent failure to train or supervise Liedle. Looman, however, has not pled claims for negligent training and supervision of Liedle, and he does not argue in his opposition brief that the International Union failed to train or supervise Liedle. Therefore, Looman

Looman advances additional arguments suggesting the International Union breached duties owed to Looman. He asserts the International Union negligently: (1) failed to inspect the canister; (2) directed Looman to repair the canister; (3) failed to warn Looman of the inherent danger in working on the canister; and (4) failed to have safety procedures in place to prevent a risk of harm to Looman. Dkt. 86 at 7.

Looman's additional arguments for liability do no withstand scrutiny. All of the acts of negligence alleged to have been committed by the International Union are necessarily predicated upon an assumption that either Liedle or the International Union could reasonably foresee that these alleged negligent acts would result in an injury to Looman. But because Liedle had no prior knowledge about the dangers involved in working on air brake canisters, it was not foreseeable to Liedle that he should inspect the canister, warn Looman, implement safety procedures, and instruct Looman not to work on the canister. Similarly, there is no evidence indicating that the International Union itself — other than through Liedle — had notice of the damaged air brake canister, or notice of Looman's efforts to repair the damaged canister. Absent knowledge that Liedle was allowing Looman to perform the repairs, the International Union, as an entity,

_____

has not advanced that claim for relief.

was not under any further duty of care towards Looman.

Looman next asserts the International Union is subject to liability due to Liedle's failure to call Mr. Kohl, prior to allowing Looman to work on the canister, to ascertain or assess the dangerousness of the work Looman was going to perform. But again, since it was not reasonably foreseeable to Liedle that the repair work would expose Looman to a risk of harm, he was not under a duty to make an inquiry with Mr. Kohl as to the repair work he was allowing Looman to perform, or to ascertain whether that work was dangerous.

Finally, Looman argues that his expert witness's opinion sufficiently establishes the standard of care by which Liedle's conduct must be judged. His expert, Jim Headlee, submitted an expert report in which he opines that due to the significant dangers involved in working on an air brake canister, and in view of Looman's lack of experience with air brake canisters, "Liedle should [not] have allowed Mr. Looman to work on this air brake chamber." Dkt. 80-1.

Mr. Headlee's opinion, though, does not alter the legal duty of care to which Liedle was subject. The applicable duty is an issue of law for the Court to establish. Under the circumstances of this case, since it was not reasonably foreseeable to Liedle that by allowing Looman to work on the canister he was exposing Looman to a risk of harm, Liedle was not subject to a greater duty of

care. Therefore, as a matter of law, contrary to Mr. Headlee's asserted opinion, there is no basis for the imposition of a legal duty upon Liedle that would have prohibited him from allowing Looman to work on the canister under the circumstances of this case, i.e. Liedle was not legally obligated to prevent Looman from working on the canister because it was not reasonably foreseeable to him that Looman's work could result in injury to him.

**B.      Punitive Damages Against the State Defendants**

The State Defendants move for summary judgment dismissing Looman's claim for exemplary or punitive damages on the ground that "[t]he state and other governmental entities are immune from exemplary and punitive damages[]" as proscribed by Mont. Code Ann. § 2-9-105. This aspect of their motion should be denied.

As discussed, Looman has thus far advanced viable claims of negligence against the State Defendants predicated upon McQueary's conduct. In addressing the issue of punitive damages that could be awarded based on that conduct, the State Defendants advance the bare assertion that they are immune from punitive damages under Mont. Code Ann. § 2-9-105. But they did not engage in any analysis of the interplay between section 2-9-105, and the specific provisions of section 2-9-102 which subject them to liability for McQueary's conduct, and the provisions of section 2-9-305(2) and (3) which require them to indemnify

McQueary and to "pay any judgment for damages" based on McQueary's conduct.

Nonetheless, a ruling as to whether the referenced sections protect the State Defendants against paying an award of punitive damages stemming from McQueary's conduct is premature. The issues are more appropriately addressed in the event punitive damages are awarded at trial. Therefore, the State Defendants' motion for summary judgment as to Looman's claim for punitive damages should be denied.

## IV.  CONCLUSION

Based on the foregoing, the Court hereby recommends the following:

1.  Looman's motion for summary judgment establishing the State Defendants' negligence as a matter of law should be DENIED.

2.  The International Union's summary judgment motion should be GRANTED, and Looman's claims of negligence against the International Union should be DISMISSED.

3.  The State Defendants' summary judgment motion addressing Looman's assertion of the doctrine of res ipsa loquitur is properly construed as a motion in limine and GRANTED. Their motion for summary judgment should otherwise be DENIED in all further respects.

DATED this 31st day of January, 2013.

Jeremiah C. Lynch
United States Magistrate Judge